## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RADIO SYSTEMS CORPORATION,     ) | |
| ) | Case No.   18-cv-01916 |
| Plaintiff,     ) | |
| ) | |
| vs.     ) | |
| ) | |
| ARTUR GILOWSKI, an individual doing     ) | |
| business as "arturg10," "marll-store," "sbdg-     ) | |
| outlet," and "front-outlet" on www.eBay.com     ) | |
| and as "DOLPAT" on www.Amazon.com;     ) | |
| IZABELLA DOLBA, an individual doing     ) | |
| business as "izzyo8989" on www.eBay.com;     ) | |
| and KINGA WISNIEWSKA, an individual     ) | |
| doing business as "creatornia-art" on     ) | |
| www.eBay.com,     ) | |
| ) | |
| Defendants.     ) | |

## COMPLAINT FOR DAMAGES, INJUNCTIVE, AND
## OTHER RELIEF, FOR VIOLATION OF 15 USC § 1114,
## 15 USC § 1125(a), 15 USC § 1125(c) AND RELATED CLAIMS

Plaintiff Radio Systems Corporation ("RSC") brings this action against Defendant Artur Gilowski, an individual doing business as "arturg10," "marll-store," "sbdg-outlet," and "front-outlet" on www.eBay.com ("eBay") and as "DOLPAT" on www.Amazon.com ("Amazon"); Defendant Izabella Dolba, an individual doing business as "izzyo8989" on eBay; and Kinga Wisniewska, an individual doing business as "creatornia-art" on eBay (collectively, "Defendants"), for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114; false advertising in violation of 15 U.S.C. § 1125(a)(1)(B); unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A); trademark dilution in violation of 15 U.S.C. § 1125(c); common law trademark infringement; common law unfair competition; violation of the Illinois Uniform Deceptive Trade Practices Act; and tortious interference with existing contracts and business relationships. These claims arise out of Defendants' misappropriation of RSC's trademarks in connection with

Defendants' unlawful and unauthorized sale of materially different and non-genuine RSC products on the Internet to unwitting consumers.

## PARTIES

1.      RSC is a corporation, organized under the laws of the State of Delaware, with its principal place of business located in Knoxville, Tennessee.

2.      Defendant Artur Gilowski ("Defendant Gilowski") is an in individual who, on information and belief, resides at 136 N. Norman Dr., Palatine, Illinois 60074 and may be served with process there or anywhere else he may be found.   Defendant Gilowski conducts business online throughout the United States, including through storefronts called "arturg10," "marll-store," "sbdg-outlet," and "front-outlet" on eBay and "DOLPAT" on Amazon.

3.      Defendant Izabella Dolba ("Defendant Dolba") is an individual who, on information and belief, resides at 136 N. Norman Dr., Palatine, Illinois 60074 and may be served with process there or anywhere else she may be found.  Defendant Dolba conducts business online throughout the United States, including through a storefront called "izzyo8989" on eBay.

4.      Defendant Kinga Wisniewska ("Defendant Wisniewska) is an individual who, on information and belief, resides at 327 S. Cedar Ave., Wood Dale, Illinois 60191 and may be served with process there or anywhere else she may be found.  Defendant Wisniewska conducts business online throughout the United States, including through a storefront called "creatornia-art" on eBay.

## JURISDICTION

5.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338, and 28 U.S.C. § 1367.  RSC's federal claims are predicated on 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) and (c), and its claims arising under the laws of the State of Illinois are

substantially related such that they form part of the same case or controversy under Article III of the United States Constitution.

6.     This Court has personal jurisdiction under the Due Process Clause because Defendants, as residents of the State of Illinois, have sufficient minimum contacts with Illinois. Defendants have also purposefully availed themselves of the privilege of conducting activities and causing a consequence in the State of Illinois by, among other things, advertising and selling infringing products to consumers within Illinois through highly interactive commercial websites.

7.     This Court has personal jurisdiction over Defendants pursuant to 735 ILCS § 5/2-209(b)(2) because they are residents of the state of Illinois.  Additionally, this Court has personal jurisdiction over Defendants pursuant to 735 ILCS §§ 5/2-209(a)(1) and 5/2-209(a)(2) because the Defendants transacted business in Illinois and also caused tortious injury in Illinois while deriving substantial revenue from goods sold in Illinois.

## VENUE

8.     Venue is properly founded in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to RSC's claims occurred within this judicial district or, in the alternative, because a defendant is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

### RSC and Its Trademarks

9.     RSC is a leading manufacturer of pet products, with a portfolio that includes an array of electronic training and containment systems, waste management products, fountains, pet doors, and innovative treats.  RSC and its brands—including PetSafe® and SportDOG®—are recognized for their exceptional quality worldwide, and RSC currently sells its products in more

than 50 countries. These products are available for sale only through sellers who are authorized by RSC to sell RSC products ("Authorized Sellers").

10. RSC devotes a significant amount of time, energy, and resources to protecting the significant value of its brands, products, name, and reputation. By ensuring that only Authorized Sellers are able to sell RSC products, RSC is better able to monitor and control the quality and integrity of its products, to ensure that consumers purchasing its products are better protected from any potential defects in their material and/or workmanship, and to ensure that customers receive accurate information about the care and use of RSC products. When products are sold by sellers outside of RSC's Authorized Seller network, particularly those like Defendants who sell anonymously online, RSC loses its ability to oversee product quality in this fashion.

11. RSC owns numerous trademarks under each of its brands that are registered with the United States Patent and Trademark Office. Trademarks owned by RSC that are associated with the PetSafe brand include, but are not limited to, PETSAFE® (U.S. Trademark Registration Nos. 2,502,307 and 4,243,585), PASSPORT® (U.S. Trademark Registration No. 4,717,254), YARDMAX® (U.S. Trademark Registration No. 4,441,324), and DRINKWELL THE ORIGINAL PET FOUNTAIN® (U.S. Trademark Registration No. 3,129,006); trademarks owned by RSC that are associated with the SportDOG brand include, but are not limited to, SPORTDOG® (U.S. Trademark Registration No. 4,931,971), FIELDTRAINER® (U.S. Trademark Registration No. 3,245,680), WETLANDHUNTER® (U.S. Trademark Registration No. 3,290,868), and UPLANDHUNTER® (U.S. Trademark Registration No. 3,700,426) (collectively, the "RSC Registered Trademarks").

12. The registration for each of the RSC Registered Trademarks is valid, subsisting and in full force and effect.

4

13. RSC actively uses and markets all of the RSC Registered Trademarks in commerce.

14. Due to the quality and exclusive distribution and sale of RSC's products, and because RSC is recognized as the source of high quality products, the RSC Registered Trademarks have enormous value.

### Online Sales are Limited to Authorized Online Sellers to Protect Consumers and RSC's Goodwill

15. The rapid rise of e-commerce sales poses unique challenges to RSC, which is committed to protecting both its brands' reputations and consumers' investments in its products. Specifically, the anonymity afforded by the Internet enables third-party sellers like Defendants to sell products bearing the RSC Registered Trademarks without RSC's knowledge or consent and, even more importantly, without any quality oversight. This significantly disrupts RSC's ability to protect the quality of its products and its consumers' experiences with its products.

16. The unfortunate reality is that anonymous online sellers habitually fail to control the quality of their products and instead often sell damaged, repackaged, incomplete, or otherwise poor-quality products to unwitting consumers. This is particularly harmful in the e-commerce space, where an unhappy online consumer does not return to a store and obtain relief, but instead goes online and airs his grievances via a negative review.

17. Importantly, online reviews are typically associated on online platforms with the *product*, not the particular online *seller* that was involved in the transaction. Most often, online reviews use a "star rating" system, with the consumer giving a certain amount of stars to reflect his or her satisfaction with the product. "One star" represents a very low level of satisfaction, and "five stars" represents a very high level of satisfaction. These ratings and the associated reviews are an integral part of a brand's identity and play a critical role in customer purchase decisions.

5

18.     First, consumers rely on these "star" ratings and associated reviews to make purchase decisions.  Obviously, consumers are less likely to purchase a product that has lower ratings.  And, since the ratings and reviews never expire, a low rating and/or negative review resulting from unscrupulous sales by unauthorized sellers can taint a product's reputation forever.

19.     Second, low ratings and negative product reviews can have the effect of influencing the Search Engine Optimization of a particular product.  Specifically, low ratings will result in an Internet search engine returning the online listings for that particular product as a lower search "result" than a competing product with a higher rating.  Again, the result of a low rating is that a consumer is more likely to purchase the higher-rated and higher-ranking competing product.

20.     These online product reviews are quickly becoming the world's product database. They are the information source that potential consumers rely upon in forming their opinions of products like those manufactured by RSC as well as in making purchase decisions.  According to the results of a survey conducted by the Pew Research Center in late 2016, 82% of U.S. adults sometimes consult online reviews when buying a new product online and 40% "always" or "almost always" consult reviews.  (*See* http://www.pewinternet.org/2016/12/19/online-reviews/).

21.     RSC has unfortunately been impacted by the presence of anonymous online unauthorized sellers, like Defendants, who, upon information and belief, have caused and/or contributed to numerous negative product reviews of PetSafe and SportDOG brand products through their actions.  By way of example only, negative reviews of PetSafe and SportDOG brand products include comments such as:

- "Product was not complete"

- "This is a defective product sold as new"

- "Poor quality control"

6

- "This came in broken"

22.    These negative reviews have caused and will continue to cause significant harm to RSC in light of the widely reported business reality that consumers are increasingly using online marketplaces to conduct product research. Studies show that consumers research a product via online reviews even if they plan to buy a product elsewhere, whether on a different Internet site or even in a brick-and-mortar store. Thus, it is not only the customers looking to buy PetSafe or SportDOG brand products on the particular website who are being influenced by these negative reviews, but all prospective customers.

23.    Moreover, efforts by unauthorized sellers like Defendants to remain anonymous online impede RSC's ability to trace negative product reviews to products sold by these unauthorized sellers, further compounding their interference with RSC's ability to control its product quality.

24.    Lack of quality control oversight and poor consumer experience are not the only issues anonymous online sellers create for RSC. Since RSC does not know who these sellers are and, as explained below, is unable to discern their identities without time-consuming and costly efforts, RSC is unable to direct these sellers to cease selling poor quality products. RSC is also unable to communicate important product safety information, such as a recall, to consumers who purchased products from anonymous online sellers.

25.    To address the significant harm that these anonymous online sales are causing and the associated harm to its brand reputation, RSC has taken substantial steps to ensure that all of its products being sold online are sold by Authorized Sellers. Authorized Sellers are individuals or entities that are known and vetted by RSC. All Authorized Sellers permitted by RSC to sell online are bound by contract to not sell anonymously and to clearly display their contact information,

including full names, addresses, telephone numbers and email addresses, on their online sales platform, among other important measures. These efforts are designed, inter alia, to ensure that RSC is able to quickly and efficiently address any product quality issues raised by customers purchasing its products online directly with the associated seller.

### RSC Imposes Important Quality Controls over the Distribution and Sale of Its Products and Expressly Limits Its Warranty to Products Purchased from Authorized Sellers

26.     Given the current e-commerce landscape, RSC must maintain strong quality standards for its online product sales, lest it face permanent diminishment of its brands' value as a result of the conduct of unscrupulous unauthorized sellers. In order to preserve these strong quality standards, RSC maintains specific quality controls over its products by conducting all sales, including online sales, through Authorized Sellers that are required to follow certain quality control procedures and policies relating to the PetSafe and/or SportDOG brand products they distribute, stock and/or sell.

27.     More specifically, Authorized Sellers are required to obtain sufficient knowledge— and be able to advise customers—regarding features, uses, and care for the PetSafe or SportDOG brand products they sell. This requirement ensures that consumers who are purchasing a PetSafe or SportDOG brand product can be properly informed of any maintenance, upkeep, or storage practices that may be necessary to preserve the integrity of the product. Additionally, any customer who is purchasing a PetSafe or SportDOG brand product must be fully informed regarding the various features of the product to ensure the safety of both the customer and his pet (as these products include electric shock collars).

28.     Similarly, Authorized Sellers are required to respond promptly and effectively to questions and requests from customers. Again, this requirement is essential to ensure that any

customer concern regarding effectiveness and/or safety of a PetSafe or SportDOG brand product can be accurately addressed in a timely manner.

29.     Authorized Sellers are required to assist RSC in the event of any product recall or other necessary customer safety information dissemination. Such a requirement is imperative to ensuring the safety of both consumers and their pets. If RSC is made aware of a potential safety concern with a PetSafe or SportDOG brand product, RSC needs to be able to quickly and effectively disseminate this information to consumers.

30.     Lastly, Authorized Sellers are forbidden from modifying the packaging of PetSafe or SportDOG brand product, or removing any labels or literature accompanying the products. This prohibition is essential in ensuring that a consumer who purchases a product is provided with complete and accurate information regarding the safety, maintenance, and use of the product.

31.     Additionally, as a benefit to consumers, in association with the purchase of a PetSafe or SportDOG brand product, RSC provides a warranty to the first consumer who purchases such a product. This warranty provides for repair of all manufacturer's defects, to the original retail consumer purchaser, for a period of time determined by each product's specific warranty ("the Warranty").

32.     Because RSC cannot ensure the quality of products purchased outside of authorized chains of distribution, the Warranty is available only for products purchased from Authorized Sellers unless otherwise prohibited by law.

33.     It is well known that the availability and applicability of product warranties is a product benefit that consumers deem material to their purchase decisions.

**Defendants' Interference with RSC's Quality Control Requirements**

34.     Upon information and belief, sometime prior to May 2017, Defendants began selling products bearing the RSC Registered Trademarks through eBay and Amazon stores using fictitious names, including "arturg10," "marll-store," "sbdg-outlet," "front-outlet," "DOLPAT," "izzyo8989," and "creatornia-art."   The use of fictitious names by Defendants is an obvious attempt to avoid revealing their true identities to RSC and consumers and to avoid liability for their illegal actions.

35.     Because of Defendants' anonymity, consumers do not know whether they are buying products from a liquidator, someone's garage, or a national retailer.

36.     Defendants' anonymity harms not only consumers, but also RSC, as it impairs RSC's ability to trace product quality issues.  Since the Defendants' identities are unknown, should any quality issues arise with the products they sell, it is impossible for RSC to quickly ascertain the source of these inferior quality products.  Defendants' anonymity also affords them the ability to willfully interfere with RSC's product tracking systems to prevent RSC from potentially determining (and shutting down) the source of their unauthorized products.

37.     Additionally, because of Defendants' use of fictitious names, RSC was forced to expend significant resources investigating the individuals and/or entities behind these online storefronts, in order to protect its brand.

38.     Specifically, RSC paid outside investigators, who were forced to engage in time-consuming and costly efforts to determine the identities of and connection between the Defendants.

39.     Based on investigations of the identities of the persons behind the eBay and Amazon stores, RSC identified Defendant Gilowski as the operator of the "arturg10," "marll-

store," "sbdg-outlet," "front-outlet" and "DOLPAT" stores, and Defendant Dolba and Defendant Wisniewska as the operators of the respective "izzyo8989" and "creatornia-art" stores.

40. Tracking information on the products sold by the Defendants and purchased by RSC show that these products were originally sold by RSC to its Authorized Sellers, PetSmart Inc. and Petco Animal Supplies, Inc. Upon information and belief, Defendants did not obtain these products legally from these retailers, but instead acquired them illicitly and are now attempting to profit from their illegal acts. Defendants' clandestine activities have usurped RSC's ability to ensure the quality of the illicitly obtained products they are passing off onto unwitting consumers.

**Defendants' Illegal Sale of RSC Trademarked Products**

41. Defendants, without authorization from RSC, have sold—and are currently selling—products bearing the RSC Registered Trademarks on the Internet including, but not limited to, on eBay and Amazon.

42. Through their unauthorized use of the RSC Registered Trademarks, Defendants have misled—and continue to mislead—consumers into believing they are purchasing products with the same quality controls and customer benefits as genuine PetSafe and SportDOG brand products; in reality, however, the products Defendants are selling are both non-genuine and materially different from authentic PetSafe and SportDOG brand products.

43. The PetSafe and SportDOG brand products that Defendants are selling on the Internet are not genuine PetSafe and SportDOG brand products because Defendants are not Authorized Sellers of these products, and therefore the products they sell are not subject to RSC's quality controls, an essential feature of genuine PetSafe and SportDOG brand products.

44. Specifically, Defendants do not have sufficient knowledge regarding features, uses, and care for the PetSafe and SportDOG brand products. Indeed, they could not have such

knowledge, as they have not been provided with this information from RSC. Thus, the products that Defendants are selling are materially different from genuine PetSafe and SportDOG products because they do not come with the essential feature of assurance that the customer who purchases the product will be fully informed regarding the various features of the product to ensure the safety of both the customer and his pet.

45.     Additionally, Defendants cannot respond promptly and effectively to questions and requests from customers, as they not only lack the knowledge sufficient to respond to any inquiries but also are selling PetSafe and SportDOG brand products anonymously. Thus, customers have no way of contacting a Defendant to make their inquiries. As a result, the products that Defendants are selling are materially different from genuine PetSafe and SportDOG products because they do not come with the essential feature of having a resource to whom customers can direct any questions or concerns regarding the product.

46.     The fact that Defendants are selling the products outside of RSC's Authorized Seller network also means that they cannot assist RSC in the event of a product recall or other customer safety information dissemination, another essential quality control feature of genuine PetSafe and SportDOG brand products. Thus, the products that Defendants are selling are materially different from genuine PetSafe and SportDOG products because RSC cannot contact customers who purchase Defendant's products about product recalls or other issues related to the products' safety.

47.     Upon information and belief, the products that Defendants are selling have packaging that has been modified, including having labels and associated literature removed from the product's packaging. This makes the products that Defendants are selling materially different from genuine PetSafe and SportDOG brand products because Authorized Sellers are prohibited

from modifying the packaging of genuine PetSafe or SportDOG brand products or removing any labels or literature accompanying the products.

48.     Because of the realities of online marketplaces, including vast numbers of unauthorized sellers passing off vast quantities of damaged, expired, counterfeit and other low-quality products, goods sold online outside of RSC's Authorized Seller network and associated quality controls are more likely to be inferior.

49.     The PetSafe and SportDOG brand products that Defendants are selling on the Internet are also materially different from genuine PetSafe and SportDOG brand products because the products are not eligible for the Warranty, which is an essential feature of genuine PetSafe and SportDog brand products.

50.     First, only products sold through an Authorized Seller are eligible for the Warranty, making the products that Defendants are selling outside RSC's Authorized Seller network materially different from authentic PetSafe and SportDOG brand products.

51.     Second, because Defendants are obtaining the PetSafe and SportDOG brand products from retailers, each Defendant is considered "the original retail consumer purchaser" for purposes of the Warranty.  By representing that the products they are selling are "new," Defendants are actively misleading consumers into believing that they will be the "original retail consumer purchaser" for purposes of the Warranty when they purchase a product from a Defendant. However, this is not so.

52.     On May 12, 2017, RSC—through counsel—sent letters via eBay's messaging service to Defendants, which notified Defendants of their illegal activity and their interference with the business relationships RSC has with its Authorized Sellers.  Specifically, the notice from RSC's counsel stated, in pertinent part, that "RSC's contracts with its Dealers restrict the manner

in which Dealers may sell RSC products and specifically prohibit Dealers from selling products to persons who resell on the Internet . . . . Any time you purchase products from a Dealer and then attempt to resell those products, you have caused a breach of the contract." Defendant Wisniewska responded through eBay's messaging system, confirming receipt of the notice and indicating that she would remove the product. Neither Defendant Gilowski nor Defendant Dolba responded to the notice. However, all three Defendants continued listing PetSafe and SportDOG brand products for sale, clearly disregarding the notice of their illegal activity.

53. On June 21, 2017, after determining Defendants' identities and physical addresses through great effort, RSC—through counsel—sent letters to Defendants via email and at their respective residences concerning their continued illegal activity, including an identical notice of the interfering activity, as addressed above. Defendants completely ignored this notice, failing to respond to either RSC or its counsel. Additionally, in spite of clear notice of their illegal activity, Defendants continued to sell PetSafe and SportDOG brand products on the Internet.

### RSC Has Suffered Significant Harm

54. As a proximate result of Defendants' actions, RSC has suffered, and will continue to suffer, irreparable harm, including harm to the equity of the PetSafe and SportDOG brands, to the RSC Registered Trademarks and to the goodwill associated with the PetSafe and SportDOG brands.

55. Defendants' conduct is knowing, intentional, willful, malicious, wanton, and contrary to law.

56. RSC is entitled to injunctive relief because Defendants will otherwise continue to unlawfully sell RSC products by selling products with the RSC Registered Trademarks that are materially different from those offered for sale by RSC's Authorized Sellers. Defendants' ongoing

14

illegal conduct has caused and will continue to cause irreparable harm to the goodwill associated with the PetSafe and SportDOG brands and significant consumer confusion.

## FIRST CAUSE OF ACTION
### Trademark Infringement
### 15 U.S.C. §§ 1114

57.     RSC re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

58.     RSC is the owner of the RSC Registered Trademarks.

59.     RSC has registered the RSC Registered Trademarks with the United States Patent and Trademark Office.

60.     The RSC Registered Trademarks are valid and subsisting trademarks in full force and effect.

61.     Defendants willfully and knowingly used, and continue to use, the RSC Registered Trademarks in commerce for the purpose of selling RSC products without RSC's consent.

62.     Defendants' use of the RSC Trademarks in connection with their unauthorized sale of products is likely to cause consumer confusion, cause mistake, or deceive consumers because it suggests that the products offered for sale by Defendants are the same as the products legitimately bearing the RSC Registered Trademarks, and originate from or are sponsored by, authorized by, approved by or otherwise connected with RSC.

63.     Defendants' use of the RSC Registered Trademarks in connection with the sale of RSC products is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine and authentic RSC products.

64.     The products sold by Defendants are not, in fact, genuine and authentic RSC products.  The products sold by Defendants are materially different because, among other reasons,

they do not come with RSC's warranty and are not subject to the same quality control standards as genuine RSC products.

65.     Defendants' unauthorized use of the RSC Registered Trademarks has materially damaged the value of the RSC Registered Trademarks, caused significant damage to RSC's business relations, and infringed on RSC's Registered Trademarks.

66.     As a proximate result of Defendants' actions, RSC has suffered, and will continue to suffer, great damage, including to its business, goodwill, reputation, and profits in an amount to be proven at trial.

67.     RSC is entitled to recover its damages caused by Defendants' infringement of the RSC Registered Trademarks and to disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

68.     Pursuant to 15 U.S.C. § 1116, RSC is entitled to injunctive relief enjoining Defendants' infringing conduct.

69.     Pursuant to 15 U.S.C. § 1117(a), RSC is entitled to enhanced damages and an award of attorneys' fees.

<u>**SECOND CAUSE OF ACTION**</u>
**False Advertising**
**15 U.S.C. § 1125(a)(1)(B)**

70.     RSC re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

71.     RSC is the owner of the RSC Registered Trademarks.

72.     RSC has registered the RSC Registered Trademarks with the United States Patent and Trademark Office.

73.     The RSC Registered Trademarks are valid and subsisting trademarks in full force and effect.

74.     Defendants have willfully and knowingly used the RSC Registered Trademarks in interstate commerce, including through their product listings on eBay and Amazon, for the purpose of advertising, promoting, and selling products bearing the RSC Registered Trademarks without RSC's consent..

75.     Defendants' advertisements and promotions of their products unlawfully using the RSC Registered Trademarks have been disseminated to the relevant purchasing public.

76.     Defendants' use of the RSC Registered Trademarks in connection with the unauthorized advertising, promotion, and sale of products misrepresents the nature, characteristics, qualities, and origin of the products.

77.     Defendant's use of the RSC Registered Trademarks in connection with the unauthorized sale and advertising of products is likely to cause confusion, cause mistake, or deceive because it suggests that the products offered for sale by Defendants are genuine and authentic products, and originate from or are sponsored, authorized, or otherwise connected with RSC.

78.     Defendants' unauthorized use of the RSC Registered Trademarks, in advertising and otherwise, infringes on the RSC Registered Trademarks.

79.     As a proximate result of Defendants' actions, RSC has suffered—and will continue to suffer—great damage, including to its business, goodwill, reputation, and profits in an amount to be proven at trial.

80.     Pursuant to 15 U.S.C. § 1116, RSC is entitled to injunctive relief enjoining Defendants' infringing conduct.

81.     Pursuant to 15 U.S.C. § 1117(a), RSC is entitled to enhanced damages and an award of attorneys' fees.

### THIRD CAUSE OF ACTION
**Unfair Competition**
**15 U.S.C. § 1125(a)(1)(A)**

82.     RSC re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

83.     RSC is the owner of the RSC Registered Trademarks.

84.     RSC has registered the RSC Registered Trademarks with the United States Patent and Trademark Office.

85.     The RSC Registered Trademarks are valid and subsisting trademarks in full force and effect.

86.     Defendants have willfully and knowingly used the RSC Registered Trademarks in commerce through the sale and advertising of products without RSC's consent.

87.     Defendant's use of the RSC Registered Trademarks in connection with the unauthorized sale and advertising of products is likely to cause consumer confusion, cause mistake, or deceive an appreciable number of ordinarily prudent purchasers as to the affiliation, connection, association, sponsorship, or approval of RSC's products because it suggests that the products offered for sale by Defendants originate from or are sponsored by, authorized by, approved by or otherwise connected with RSC.

88.     Defendant's unauthorized sale of products bearing the RSC Registered Trademarks, and unauthorized use of the RSC Registered Trademarks in advertising, have materially damaged the value of the RSC Registered Trademarks and caused significant damage to RSC's business relations.

89.     Defendant's unauthorized sale of products bearing the RSC Registered Trademarks, and unauthorized use of the RSC Registered Trademarks in advertising, infringes upon the RSC Registered Trademarks.

90.     As a proximate result of Defendants' actions, RSC has suffered—and will continue to suffer—great damage, including to its business, goodwill, reputation, and profits in an amount to be proven at trial.

91.     Pursuant to 15 U.S.C. § 1116, RSC is entitled to injunctive relief enjoining Defendants' infringing conduct.

92.     Pursuant to 15 U.S.C. § 1117(a), RSC is entitled to enhanced damages and an award of attorneys' fees.

### FOURTH CAUSE OF ACTION
**Trademark Dilution**
**15 U.S.C. § 1125(c)**

93.     RSC re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

94.     RSC is the owner of the RSC Registered Trademarks.

95.     RSC has registered the RSC Registered Trademarks with the United States Patent and Trademark Office.

96.     The RSC Registered Trademarks are valid and subsisting trademarks in full force and effect.

97.     RSC is the owner of the RSC Registered Trademarks and has expended substantial time, effort, money, and resources advertising and promoting its products and services under these trademarks, including PetSafe® and SportDOG®. As such, the PetSafe and SportDOG trademarks

are the means by which PetSafe and SportDOG products and services are distinguished from others in the marketplace.

98.    The PetSafe and SportDOG trademarks are inherently distinctive, and as a result of RSC's long, continuous, and exclusive use of the PetSafe and SportDOG trademarks, they have each acquired a secondary meaning associated by purchasers and the public with RSC's products and services.

99.    RSC, PetSafe, and SportDOG are widely recognized by the general consuming public as the designated source of goods bearing the PetSafe and SportDOG trademarks.

100.    After the PetSafe and SportDOG trademarks became famous, Defendants willfully used the PetSafe and SportDOG trademarks in connection with the unauthorized and illegal sale of products.  Because the products sold by Defendants are not, in fact, genuine and authentic RSC products, Defendants' activities have caused and will continue to cause dilution of the distinctive quality of the PetSafe and SportDOG trademarks by lessening the public's ability to identify and distinguish genuine RSC products.

101.    Defendants' unlawful actions have harmed the reputation and goodwill associated with the PetSafe and SportDOG trademarks, and RSC (and its brands) has suffered and will continue to suffer immediate and irreparable injury.  Further, Defendants' actions have harmed and will continue to harm consumers interested in purchasing genuine RSC products.

102.    RSC has suffered damages including, but not limited to, loss of sales, trademark infringement, and damage to its existing and potential business relations.

103.    Pursuant to 15 U.S.C. § 1116, RSC is entitled to injunctive relief enjoining Defendants' infringing conduct.

104.    Pursuant to 15 U.S.C. § 1117(a), RSC is entitled to enhanced damages and an award of attorneys' fees.

## FIFTH CAUSE OF ACTION
### Illinois Common Law Trademark Infringement and Unfair Competition

105.    RSC re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

106.    This claim arises under the laws of the State of Illinois.

107.    RSC is the owner of the RSC Registered Trademarks.

108.    RSC has registered the RSC Registered Trademarks with the United States Patent and Trademark Office.

109.    The RSC Registered Trademarks are valid and subsisting trademarks in full force and effect.

110.    Defendants willfully and knowingly used, and continue to use, the RSC Registered Trademarks in commerce for the purpose of advertising, promoting, and selling PetSafe and SportDOG brand products to consumers without the consent of RSC.

111.    Defendants' knowing and willful use of the RSC Registered Trademarks in connection with their unauthorized and illegal sale of products without RSC's consent infringes the RSC Registered Trademarks.  This infringement includes selling products bearing the RSC Registered Trademarks that are materially different from genuine and authentic PetSafe and SportDOG brand products because, among other reasons, the products sold by Defendants are not eligible for the Warranty and are not subject to the same quality control standards as genuine PetSafe and SportDOG brand products.

112.    The products sold by Defendants bearing the RSC Registered Trademarks are not, in fact, genuine and authentic PetSafe and SportDOG brand products.

113.    The use of the RSC Registered Trademarks in connection with the unauthorized sale of products by Defendants is likely to cause consumer confusion, cause mistake, or deceive consumers because it suggests that the products offered for sale by Defendants are the same as the products legitimately bearing the RSC Registered Trademarks and are endorsed by RSC, when in fact they are not.

114.    As a proximate result of Defendants' actions, RSC has suffered and will continue to suffer immediate and irreparable harm as well as great damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

115.    RSC is also entitled to punitive damages because Defendants have acted with such a conscious and deliberate disregard of the interests of others that their conduct may be called willful or wanton.

## SIXTH CAUSE OF ACTION
### Violation of the Illinois Uniform Deceptive Trade Practices Act
### 815 ILCS 510/2

116.    RSC re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

117.    RSC is the owner of the RSC Registered Trademarks.

118.    RSC has registered the RSC Registered Trademarks with the United States Patent and Trademark Office.

119.    The RSC Registered Trademarks are valid and subsisting trademarks in full force and effect.

120.    Defendants have engaged and are engaging in a deceptive trade practice by, in the course of their business, creating a likelihood of confusion as to the source, sponsorship, approval,

or certification of the PetSafe and/or SportDOG brand products they are offering for sale to consumers.

121.    Specifically, Defendants' use of the RSC Registered Trademarks is likely to lead RSC's customers and potential customers to mistakenly conclude that Defendants' sale of PetSafe and/or SportDOG brand products is sponsored, approved, or certified by RSC.  Additionally, this use is likely to lead RSC's customers and potential customers to mistakenly conclude that Defendants' sales of PetSafe and/or SportDOG brand products have the same benefits, namely, eligibility for the Warranty, that a true and genuine PetSafe or SportDOG product has.  In reality, however, none of these things is true and Defendants' sales constitute unfair or deceptive sales practices as described in the Uniform Deceptive Trade Practices Act.

122.    As a proximate result of Defendants' actions, RSC has suffered and will continue to suffer immediate and irreparable harm as well as great damage to its business, good will, reputation, and profits in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**
**Tortious Interference with Existing Contracts and Business Relationships**

123.    RSC re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

124.    This claim arises under the laws of the State of Illinois.

125.    RSC has contracts and business relationships with its Authorized Sellers, who sell PetSafe and SportDOG brand products.

126.    Defendants have knowledge of RSC's contracts and business relationships with its Authorized Sellers, as they were specifically informed of the existence of the contracts and relationships on May 12, 2017 and June 21, 2017.

127. After Defendants were on notice that any purchase of products from an Authorized Seller for the purpose of online sale would cause a breach of the Authorized Seller's contract with RSC, Defendants intentionally induced breaches of the contracts between RSC and the Authorized Sellers. This interference was unjustifiable and was committed by Defendants with malice.

128. Defendants also interfered—and continue to interfere—with RSC's business relationships with its Authorized Sellers through their online sales of RSC products at steeply discounted prices, which has caused Authorized Sellers to terminate their business relationships with RSC. This interference was unjustifiable and was committed by Defendants with malice.

129. As a proximate result of Defendants' actions, RSC has suffered damage, including loss of sales and damage to its existing business relationships, in an amount to be proven at trial.

130. RSC is also entitled to punitive damages because Defendants have acted with such a conscious and deliberate disregard of the interests of others that their conduct may be called willful or wanton.

## **PRAYER FOR RELIEF**

WHEREFORE, RSC prays for relief and judgment as follows:

A. Judgment in favor of RSC and against Defendants in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, restitution, including disgorgement of profits, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

B. That a permanent injunction be issued enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

     i)        Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all RSC products,

     ii)       Prohibiting the Enjoined Parties from using any of the RSC Registered Trademarks in any manner, including advertising on the Internet,

     iii)      Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all RSC products as well as any products bearing any of the RSC Registered Trademarks,

     iv)      Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the RSC Registered Trademarks including: invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks,

     v)       Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any of RSC's products, or any of the RSC Registered Trademarks,

     vi)      Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo!, and Bing), to remove from the Internet any of the RSC Registered Trademarks which associate RSC's products or the RSC Registered Trademarks with the Enjoined Parties or the Enjoined Parties' website, and

     vii)     Requiring the Enjoined Parties to take all action to remove from the Internet all the RSC Registered Trademarks that the Enjoined Parties caused to appear on the Internet, including from the websites www.Amazon.com and www.eBay.com;

C.     An award of attorneys' fees, costs, and expenses; and

D.     Such other and further relief as the Court deems just, equitable and proper.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, RSC demands a trial by jury on all issues so triable.

Dated: March 16, 2018                      Respectfully submitted,

*/s/ Henry Turner, Jr.*
Henry Turner, Jr.
VALOREM LAW GROUP
218 N. Jefferson Street, Suite 300
Chicago, IL 60661
Tel: (312) 676-5460 / Fax: (312) 646-5499
hank.turner@valoremlaw.com

and

Daren S. Garcia (*pro hac* pending)
VORYS, SATER, SEYMOUR AND PEASE LLP
500 Grant Street, Suite 4900
Pittsburgh, PA 15219
Tel: (412) 904-7700 / Fax: (412) 904-7817
dsgarcia@vorys.com

Daniel C. Wucherer
VORYS, SATER, SEYMOUR AND PEASE LLP
301 E. 4th Street, Suite 3500
Cincinnati, OH 45202
Tel: (513) 723-4000 / Fax: (513) 723-4056
dcwucherer@vorys.com

***Attorneys for Plaintiff Radio Systems Corporation***